Jeremy S. Williams (VSB No. 77469)
Brian H. Richardson (VSB No. 92477)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-3500
Telephone: (804) 644-1700
Jeremy.Williams@kutakrock.com
Brian.Richardson@kutakrock.com

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION**

| | | |
|---|---|---|
| In re: | ) ) | Chapter |
| POTOMAC PILE DRIVER, LLC, | ) ) | Case No. 17-34078 (KRH) |
| Debtor. | ) ) ) | |
| PETER J. BARRETT, TRUSTEE | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Adv. Proc. No. |
| BRAD MARTIN, ROBIN MCCORMACK, POTOMAC PILE DRIVER, LLC, SHORELINE SERVICE & DESIGN, LLC, APD3, LLC, AND JACOB LILLARD, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**COMPLAINT**

Peter J. Barrett (the "Trustee"), Chapter 7 Trustee for the Bankruptcy Estate of Potomac Pile Driver, LLC ("Potomac"), by counsel, files this Complaint pursuant to Rule 7001 of the Rules of Bankruptcy Procedure and 11 U.S.C. §§ 105 and 544 against Potomac, Brad Martin ("Mr. Martin"), Robin McCormack ("Ms. McCormack"), Shoreline

1

Service & Design, LLC ("Shoreline"), APD3, LLC ("APD3"), and Jacob Lillard ("Mr. Lillard" and together with Potomac, Mr. Martin, Ms. McCormack, Shoreline and APD3, the "Defendants"). In support thereof, the Trustee states the following:

## PARTIES

1. On August 14, 2017 (the "Petition Date"), Potomac filed its fourth voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code in this Court (this "Court"). Three prior cases filed by Potomac under case numbers 14-35466-KLP, 15-33564-KLP, and 16-31926-KLP, were previously dismissed for deficiencies in the filings on November 20, 2014, August 24, 2015, and May 27, 2016, respectively.

2. On February 23, 2018, the Trustee was appointed as interim trustee to administer Potomac's bankruptcy estate and continues to serve as trustee in this case.

3. Potomac was a Virginia limited liability company with its principal place of business at 30 Lincoln Ave., Colonial Beach, Virginia 22443. As of the Petition Date, the owner and sole member of Potomac was Mr. Martin.

4. Mr. Martin is a resident of the Commonwealth of Virginia residing in Westmoreland County at 30 Lincoln Ave., Colonial Beach, Virginia 22443. Mr. Martin was also previously a debtor before this Court in connection with his personal voluntary petition for relief under Chapter 7 of the Bankruptcy Code that proceeded under case number 15-33046-KLP. Mr. Martin was denied a discharge on May 26, 2016 for failure to comply with orders of this Court pursuant to an adversary proceeding brought by the United States Trustee. That case was closed without abandonment of any assets and with all assets remaining property of the bankruptcy estate on July 6, 2017.

2

5. Ms. McCormack is a resident of the Commonwealth of Virginia residing in Westmoreland County at 112 Santa Maria Ave., Colonial Beach, Virginia 22443. Upon information and belief, Ms. McCormack is in a committed relationship with Mr. Martin.

6. Shoreline is a limited liability company organized under the laws of the Commonwealth of Virginia and, upon information and belief, has its principal place of business at 112 Santa Maria Ave., Colonial Beach, Virginia 22443.

7. Mr. Lillard is a resident of the Commonwealth of Virginia, residing in Westmoreland County at 27 Third Street, Colonial Beach, Virginia 22443, and upon information and belief is a long-time personal friend of Mr. Martin.

8. APD3 was a limited liability company organized under the laws of the Commonwealth of Virginia and, upon information and belief, had its principal place of business at 27 Third Street, Colonial Beach, Virginia 22443.

## JURISDICTION AND VENUE

9. This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157 (b) (2)(A), (H) and (O).

10. This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334.

11. Venue in this Court is proper pursuant to 28 U.S.C. § 1409.

12. This Court has personal jurisdiction over all necessary parties pursuant to Rule 7004(f) of the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

13. Mr. Martin was the sole owner and operator of Potomac, which was primarily in the business of providing pile driving services and the construction of piers and docks.

14. Potomac was founded in April 2011 and operated until approximately April 2016, when it filed a voluntary petition under Chapter 7 of the Bankruptcy Code [Case No. 16-31926].

15. During this time and in connection with the business of Potomac, Mr. Martin, on behalf of Potomac, incurred a substantial amount of debt. Mr. Martin also accrued a substantial amount of personal debt in connection with the operation of Potomac and otherwise.

16. Unable to satisfy these debts, Mr. Martin, for several years, has been involved in a fraudulent scheme and conspiracy to perpetrate fraud upon his own and Potomac's creditors.

17. To help accomplish this scheme, Potomac operated only on a cash basis through under-the-table transactions, had never kept any books or records, maintained no bank accounts, and had never filed tax returns or paid any taxes of any kind.

18. In part 6 of the Statement of Financial Affairs of Potomac, Mr. Martin indicates that he sold a 14-foot boat for cash "3 or 4 months" prior to the Petition Date, to a buyer named "Big Mac (real name unknown)" who apparently resides in Colonial Beach. Such is indicative of his efforts to hinder the creditors of Potomac.

19. Mr. Martin ran Potomac in such a fashion because he knew it would be difficult, if not impossible, for creditors to attach any assets of Potomac or recover any of the debts owed to them.

20. Potomac did not have a formal place of business, was undercapitalized if capitalized at all and was essentially a sole proprietorship operated by Mr. Martin.

21. Once the debt Mr. Martin had incurred on behalf of himself and Potomac reached an inescapable level, Mr. Martin concocted a scheme whereby he would simply open a new business and operate under that new entity's name.

22. Accordingly, he convinced Ms. McCormack and Mr. Lillard to use their names to form Shoreline and APD3.

23. At all relevant times, and upon information and belief, Ms. McCormack has been and is the sole member of Shoreline, and Mr. Lillard was the sole member of APD3. The day to day business operations and management of Shoreline and APD3, however, were conducted by or at the direction of Mr. Martin with little to no involvement by Ms. McCormack or Mr. Lillard.

24. Indeed, upon information and belief, prior to the Petition Date, Ms. McCormack had virtually no relationship to or familiarity with Shoreline other than being listed as the member.

25. Like Potomac, Shoreline and APD3 are all also primarily in the business of providing pile driving services.

26. Also like Potomac, Shoreline and APD3 do not have a formal place of business. Potomac had its principal place of business at the personal residence of Mr. Martin. Shoreline has its principal place of business at the personal residence of Ms.

McCormack, where Mr. Martin also resides. APD3 had its principal place of business at the personal residence of Mr. Lillard.

27. Like Potomac, no capital was contributed or set aside for the operation of Shoreline or APD3.

28. Since ceasing operation on behalf of Potomac and continuing operations through Shoreline and APD3, numerous parties have advised that Mr. Martin is holding himself out as the owner and operator of these businesses. In fact, on Shoreline's Facebook page, they promote a customer review wherein Mr. Martin was specifically referenced as the contact for the business. Such is the case even though Mr. Martin previously testified that he is a stay-at-home dad with no connection to the Shoreline business.

29. Mr. Martin has also entered into contracts with customers under the name "APD3 LLC – Shoreline Service" thereby representing to the public that these entities are the same and are under his control.

30. Mr. Martin also conducts business with vendors, like Wood Preservers, Inc. ("WPI") and 84 Lumber on behalf of Shoreline and holds himself out as the owner and operator of Shoreline and APD3. In fact, accounts on behalf of Mr. Martin, Ms. McCormack, Mr. Lillard, APD3 or Shoreline were all subject to the same credit limitations with WPI. Mr. Martin also negotiated credit terms with WPI on behalf of Shoreline and APD3. Even after Potomac ceased operations, Mr. Martin continued to purchase supplies under his name and/or Potomac's name.

31. Mr. Martin also has a history of conducting his pile driving business through various entities. In fact, prior to forming Shoreline in his girlfriend's name and

APD3 through his friend, Mr. Martin conducted his pile driving business through other business entities and trade names, including Mid Atlantic Building Group, Marine Contractors, and Martin Marine. These businesses were also plagued by under-the-table dealings, unscrupulous business management and suspicious activities.

32. Upon information and belief, Mr. Martin, Ms. McCormack and Mr. Lillard formed Shoreline to continue to shield the assets of Mr. Martin and Potomac from their respective trustees in bankruptcy and from creditors while preserving the assets for the use of Shoreline and APD3.

33. Because Shoreline and APD3 were formed in the name of Ms. McCormack and Mr. Lillard, creditors of Potomac and Mr. Martin have been unable to obtain a recovery from the sham companies. Such frustration was all part of Mr. Martin's scheme to keep the equipment, generate income for his personal use, and avoid the substantial debt Mr. Martin had accrued through Potomac.

34. To hide his fraudulent activities, Mr. Martin ensured that Potomac kept no formal corporate books or accounting records which would reflect its transactions and corporate actions.

35. Clearly, Mr. Martin conducted his businesses through sham transactions. Mr. Martin, both individually and on behalf of Potomac, both (i) diverted funds from his businesses, including Potomac, APD3 and Shoreline, for his own benefit or the benefit of friends complicit in this fraudulent scheme; and (ii) used his girlfriend's name, accounts and businesses to conduct business outside the reach of the many creditors of Potomac.

36. Mr. Martin presents himself as a failed business owner with a dead company in Potomac, but neither is true. Mr. Martin has simply moved Potomac's assets

and business out of the reach of creditors. This fraudulent scheme allows Mr. Martin and Potomac to continue an ongoing business using the same equipment and materials that belong to their respective bankruptcy estates while the many debts caused by such fraud, unscrupulous business practices and activities remain unsatisfied.

## COUNT I
(Alter Ego/Single Business Entity)

37. The Trustee incorporates the above-referenced paragraphs as though fully set forth herein.

38. APD3 and Shoreline, individually and collectively, constitute the alter ego, alias, stooge, or dummy of Potomac.

39. With regard to these entities, there is and/or has been (a) an overlapping of officers and directors, (b) common offices and mailing addresses, (c) sharing of expenses and equipment, (d) failure to follow corporate formalities, (e) undocumented transfers of assets and funds between corporations and individuals who have interests in such corporations, (f) employees of one corporation rendering services for another, (g) one company paying the expenses of another, (h) dominion and control of one corporation by the other and/or entities who have substantial interests in such corporations, and (k) undercapitalization of the corporation within the reach of Mr. Martin's and Potomac's creditors.

40. Mr. Martin has exercised undue dominion and control over the corporate defendants and used the corporate defendants to perpetrate injustice and fundamental unfairness.

41. Disregarding the corporate entity of APD3 and Shoreline is necessary to promote justice and protect the rights of the creditors of Potomac.

42. Each of the corporate defendants should be accountable for the debts of Potomac, as each has acted, individually and in concert, as a device or sham to disguise wrongs, obscure fraud, unduly and unjustly enrich themselves, and possibly conceal criminal conduct.

43. The Trustee therefore asks that the corporate defendants be held accountable for the debts of Potomac and that the Court deem Potomac and the corporate and individual defendants to be alter egos of one another.

44. In the alternative, the Trustee asks that this Court deem Potomac, APD3, and Shoreline to be, in fact, a single business entity and that each be jointly and severally liable for Potomac's debts.

45. The Trustee further asks that this Court find APD3 and Shoreline liable for any and all damages that result from their actions and for any other relief the Court deems appropriate.

**WHEREFORE,** the Trustee respectfully requests that this Court enter an Order finding that Potomac, APD3, and Shoreline constitute the alter-ego of one another and that each is jointly and severally liable for the debts and obligations of the others.

## COUNT II
(Piercing the Corporate Veil)

46. The Trustee incorporates the above-referenced paragraphs as though fully set forth herein.

47. A unity of interest and ownership exists such that the separate personalities of the corporate defendants and the individual defendants no longer exist, and treating the individual and corporate defendants as separate entities would be inequitable.

48. The individual defendants, individually and collectively, constitute the alter ego, alias, stooge or dummy of the corporate defendants.

49. Mr. Martin has exercised undue dominion and control over the corporate defendants and the individual defendants have used the corporate defendants to perpetrate injustice and fundamental unfairness.

50. Disregarding the corporate entities of the corporate defendants is necessary to promote justice and protect the rights of the creditors of Potomac.

51. Mr. Martin, Ms. McCormack, and Mr. Lillard should be held personally responsible and accountable for the debts of Potomac, as each has acted, individually and in concert, as a devise or sham to disguise wrongs, obscure fraud, unduly and unjustly enrich themselves, and possibly conceal criminal conduct.

52. As such, the Trustee asks that the Court pierce the corporate veil.

**WHEREFORE,** the Trustee respectfully requests that this Court enter an Order piercing the veil, horizontally and vertically, and holding that all of the Defendants are responsible for the debts and liabilities of others and that the Defendants be held liable for any and all damages that result from their actions and for any other relief the Court deems appropriate.

## COUNT III
(Substantive Consolidation)

53. The Trustee incorporates the above-referenced paragraphs as though fully set forth herein.

54. Substantive consolidation is an equitable doctrine that permits a bankruptcy court, in appropriate circumstances, to disregard the legal separateness of a debtor.

55. Substantive consolidation typically results in the pooling of all liabilities and assets of the individuals and entities to be consolidated, the satisfaction of liabilities from the resultant common fund of assets, and the elimination of all duplicative inter-entity claims.

56. The individual defendants and corporate defendants have so extensively commingled their assets and business functions, such that a total separation of the entities would be impossible or not cost effective.

57. The individual defendants and corporate defendants have failed to keep and failed to disclose business records, nor have they maintained the necessary corporate formalities.

58. Through a significant number of fraudulent transfers between Potomac and each of the defendants, the individual defendants are using the corporate defendants to shield fraud, hinder creditors, unduly enrich themselves, and otherwise advance an inequitable result.

59. Based on these and other factors, substantial consolidation of the corporate and individual defendants is necessary to ensure the equitable treatment of all creditors.

**WHEREFORE** the Trustee respectfully requests that this Court enter an Order whereby this Court exercises its equitable powers and substantially consolidates the corporate and individual Defendants, pools the assets of said Defendants, and satisfies the Defendants' liabilities and obligations from the pooled funds.

## **COUNT IV**

(Breach of Fiduciary Duty)

60. The Trustee incorporates the above-referenced paragraphs as though more fully set forth herein.

61. As of the Petition Date, Mr. Martin was at all times relevant the sole officer and director of Potomac.

62. By virtue of his status as an officer and/or director of Potomac, Mr. Martin was in a fiduciary relationship with Potomac and owed it the duty of good faith, fair dealing, and acting in the best interests of the corporation.

63. Mr. Martin breached those duties in that he failed to act in the corporation's best interests and instead acted in his own interests. By way of example, Mr. Martin has converted money and assets that rightfully belonged to Potomac for his own personal use and for the use and benefit of other companies controlled by him. Additionally, Mr. Martin ran the company without any regard to corporate formalities, legal requirements and tax obligations, all in violation of both Federal and Virginia law.

64. As a result of those breaches, and others, Potomac has been damaged.

65. As a result of the various breaches of fiduciary duties, Potomac has been stripped of valuable assets which the Trustee could have used to administer the bankruptcy estates of the companies.

**WHEREFORE**, the Trustee respectfully requests that this Court enter an Order of Judgment against Mr. Martin, in amount to be determined at trial, plus punitive damages, plus interest at the judgment rate from the date of judgment until paid, plus his costs expended, including a reasonable attorney's fee.

              **PETER J. BARRETT, TRUSTEE**

            By: /s/ *Brian H. Richardson]*
               Counsel

Jeremy S. Williams (VSB No. 77469)
Brian H. Richardson (VSB No. 92477)
**KUTAK ROCK LLP**
901 East Byrd Street, Suite 1000
Richmond, Virginia 23219-3500
Telephone: (804) 644-1700
Jeremy.Williams@kutakrock.com
Brian.Richardson@kutakrock.com

*Counsel to Peter J. Barrett, Trustee*